❒ Original     ❒ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.23-854M(NJ) |
| Information associated with the following Facebook user | ) | Matter No. 2021R00182 |
| "Loww Nu" (Target Account), stored at a premises controlled | ) | |
| by Meta Platform Inc., as further described in Attachment A | ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before 2/8/2023_____ *(not to exceed 14 days)*
❒ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❒ for _____ days *(not to exceed 30)*   ❒ until, the facts justifying, the later specific date of _____ .

Date and time issued:1/25/2023 @ 7:43 A.M._____

*Judge's signature*

City and state:   Milwaukee, Wisconsin_____        Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

**Property to Be Searched**

**Matter No. 2021R00182**

This warrant applies to information associated with Facebook account associated with user name "Loww Nu" and Facebook URL <u>https://www.facebook.com/montrice.HOOD</u> (**Target Account)** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

## Matter No. 2021R00182

**I.     Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)     All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2022, to present;

(c)     All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from January 1, 2022, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user from January 1, 2022, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(f)     Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g)     All "check ins" and other location information;

(h)     All IP logs, including all records of the IP addresses that logged into the account;

(i)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)     All information about the Facebook pages that the account is or was a "fan" of;

(k)     All past and present lists of friends created by the account;

(l)     All records of Facebook searches performed by the account from January 1, 2022, to present;

(m)     All information about the user's access and use of Facebook Marketplace;

(n)     The types of service utilized by the user;

(o)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)    Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of in violation of Title 21 United States Code Sections 841(a)(1) and 846, involving Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD, Andrew CRAWFORD, Quentin Moore, Montrice HOOD, and other identified and unidentified individuals since January 1, 2022, to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:§

(a) The sale of illegal drugs, any preparatory steps taken in furtherance of the criminal scheme, and communications between Montrice HOOD, and others related to the relevant offense conduct of the sale of illegal drugs or possession of firearms.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information associated with the following Facebook user<br>"Loww Nu" (Target Account), stored at a premises controlled<br>by Meta Platform Inc., as further described in Attachment A | )<br>)<br>)<br>)<br>)<br>)    Case No.23-854M(NJ)<br>   Matter No. 2021R00182 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

     I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

  See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

  See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  ☑ evidence of a crime;

  ☑ contraband, fruits of crime, or other items illegally possessed;

  ☐ property designed for use, intended for use, or used in committing a crime;

  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) & 846 | Possession with intent to distribute, distribution, and conspiracy to possess with the intent to distribute controlled substances. |

The application is based on these facts:

  See Attached Affidavit.

  ☑ Continued on the attached sheet.

  ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

                                                              _____
                                                            *Applicant's signature*

                                                       DCI SA Mitchell G. Ward
                                                           *Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
               telephone                  *(specify reliable electronic means).*

Date: 1/25/2023

                                                        *Judge's signature*

City and state:   Milwaukee, Wisconsin                  Honorable Nancy Joseph, U.S. Magistrate Judge
                                                         *Printed name and title*

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT
MATTER NUMBER 2021R00182**

I, Mitchell G Ward, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND AGENT BACKGROUND</u>**

1.        I make this affidavit in support of an application for search warrant for information associated with the following Facebook user "Loww Nu" [ https://www.facebook.com/montrice.HOOD] (**Target Account**) that is stored at premises owned, maintained, controlled, or operated by Meta Platform Inc., ("Meta") a company headquartered in Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A and B.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta Platform Inc to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2.        I am a state certified law enforcement officer employed as a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation, (DCI) and have been a sworn officer in the State of Wisconsin for over 30 years.  I am currently assigned to DCI's Milwaukee Field Office, Narcotics Bureau.  I am also a federally deputized task force officer for the United States Postal Inspection Service ("USPIS").  As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3.        The USPIS is the primary investigative arm of the United States Postal Service ("USPS") and is charged under Title 18, United States Code, 3061 with the enforcement of laws

governing the use and movement of the United States Mail, including the misuse and fraudulent schemes involving the mail, crimes relating to mail fraud, narcotics trafficking and identity theft involving the United States Mail.

4.     I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. I have had formal training and have participated in numerous complex drug trafficking investigations, including ones using wiretaps. More specifically, my training and experience includes the following:

a.     I have utilized informants to investigate drug trafficking. Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

b.     I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

c.     I have extensive experience conducting street surveillance of individuals engaged in drug trafficking. I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

d.     I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.     I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.     I know that drug traffickers often use electronic equipment and wireless and land line telephones to conduct drug trafficking operations;

g.      I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.      I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.      I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.      I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

5.      Based on my training, experience and discussions with United States Postal Inspectors and North Central (formerly Wisconsin) High Intensity Drug Trafficking Area-HIDTA drug task force officers, I know narcotics, drugs, paraphernalia, controlled substances, and moneys associated with the sale of narcotics, drugs, and controlled substances are sent through the USPS system, and I am familiar with many of the methods used by individuals who attempt to use the USPS to illegally distribute controlled substances.

6.      The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      I am currently participating in an investigation of cocaine, marijuana, MDMA, acid and ketamine trafficking, possession of machinegun, and possession of firearms by prohibited persons involving Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD, Andrew CRAWFORD, Quentin Moore, Montrice HOOD, and other identified and unidentified individuals. I am familiar with the facts

and circumstances regarding this investigation as a result of my personal participation in this investigation, and my review of: (a) consensually recorded telephone conversations and face-to-face meetings; (b) reports prepared by, and information obtained from, other federal, state, and local law enforcement agents and officers; (c) information obtained from numerous witnesses, including confidential sources; (d) controlled buys; (e) documentary evidence; (f) physical and electronic surveillance; and (g) physical seizures.

8.     This affidavit is submitted in support of an application for a search warrant for Montrice HOOD's Facebook Account, for evidence of HOOD's and others' involvement in the above-described offenses between January 1, 2022, to present.   More specifically, I seek authorization to search Facebook's information associated with Montrice HOOD, who is the user associated with the Facebook accounts with the following usernames and ID numbers (Figure 1):

| FACEBOOK NAME | FACEBOOK URL |
| --- | --- |
| Loww Nu | https://www.facebook.com/montrice.HOOD |



(Figure 1)

**PROBABLE CAUSE**

9.      Case agents were made aware of a Milwaukee area armed drug trafficking organization (ADTO) led by Austin MISURACO. MISURACO uses a variety of communication applications to distribute narcotics including Instagram, Signal, SnapChat and others. Austin MISURACO has used account usernames such as "bestplug-414", "414Plug", "milwaukee1414", and "Best Plug". In addition to distributing cocaine, Austin MISURACO is also involved in distributing large amounts of Acid, MDMA (Molly), Phycobilin (Mushrooms), THC Vape Cartridges, THC and THC concentrate (Wax). Several other members of Austin MISURACO's drug trafficking organization have been identified which include Andrew Crawford and Alexander Crawford, as well as street level dealers associated with the Blow Boyz street gang. Members include Quentin Moore, Quincy Moore (Quentin's brother), and Montrice HOOD.

10.      On April 16, 2021, MPD obtained a state search warrant for Austin MISURACO's iPhone 11. Case agents reviewed Austin MISURACO's extraction reports. Upon reviewing the extraction report, the report shows Austin MISURACO is trafficking cocaine, MDMA, marijuana, prescription drugs, acid, and mushrooms. Austin MISURACO is using various messaging applications such as Snapchat, Telegram and Signal to facilitate the sales and distribution of narcotics in the greater Milwaukee area. MISURACO regularly posts price lists and photos of narcotics on social media. Case agents reviewed numerous messages related to drug trafficking between Austin MISURACO and his DTO members: Quentin MOORE, Andrew MISURACO, Andrew CRAWFORD, Alexander CRAWFORD, and Montrice HOOD.

11.      Case agents reviewed Austin MISURACO and messages with one of the ADTO's distributors, Montrice HOOD aka "NuNu." Case agents identified Montrice HOOD's phone numbers, 414-429-8131 and 414-899-2570, Montrice HOOD's Instagram Account @nu_grams, and his Facebook account. Program Analyst Vargas identified message strings between October

of 2019 through March of 2021 from Facebook, Instagram and Native Messages related to the ADTO's drug trafficking.

12.     The messages showed Montrice HOOD being directed to various locations in the Milwaukee Area to conduct sales of narcotics by Austin MISURACO. Montrice HOOD also had his own customers that he supplied with narcotics obtained from Austin MISURACO. Montrice HOOD and Austin MISURACO often discussed weights, dollar amount and types of narcotics they are distributing, as well as law enforcement presence.

13.     For example, on March 27, 2021, Montrice HOOD messages Austin MISURACO, "I gotta 4 pound pop rn I need sum og." Based on my training, experience, and investigation into this DTO, I  believe this message is Montrice HOOD asking for four pounds of high-grade marijuana from Austin MISURACO, because Montrice HOOD has a waiting customer.  Austin MISURACO replied with "Only stuff around is ones I fronted Seamus 2000p." Based on my training, experience, and investigation into this DTO, I understand this message to mean that Austin MISURACO only had access to mid-grade marijuana that sells for $2000 per pound. Austin MISURACO gave an unknown amount of this marijuana to "Seamus" on consignment.

14.     Case agents have recovered Facebook Messaging Strings directly related to drug trafficking from forensic examination of suspect phones recovered during the investigation.  The forensic examinations show that several members of the DTO, including HOOD,  used Facebook Messenger to communicate with each other regarding drug trafficking. The messages shown in Figure 2 was obtained from the phone extraction of Austin MISURACO.

| Sent | From | Message | Attachments |
|---|---|---|---|
| 11/12/2020 UTC-06:00 | 08:54:57 1000039630 42524 | Cash app Andy take him to bank | |
| 11/12/2020 UTC-06:00 | 08:55:03 10000396304 2524 | He at momma house | |
| 11/12/2020 UTC-06:00 | 08:55:09 10002740311 1409 | We're he at | |
| 11/12/2020 UTC-06:00 | 08:55:19 10000396304 2524 | Momma crib | |
| 11/12/2020 UTC-06:00 | 08:55:45 10002740311 1409 | Ight funna pull up there | |
| 11/12/2020 UTC-06:00 | 20:09:47 10000396304 2524 | | |
| 11/12/2020 UTC-06:00 | 20:10:31 10000396304 2524 | | |
| 12/11/2020 UTC-06:00 | 11:51:02 10000396304 2524 | | |
| 12/16/2020 UTC-06:00 | 17:05:49 10000396304 2524 | | |
| 12/16/2020 UTC-06:00 | 17:06:30 10002740311 1409 | My phone died I'm waiting on my moma wit my cheese put my 2 to da side | |
| 03/02/2021 UTC-06:00 | 19:30:18 10000396304 2524 | Coke pay me now | |

(Figure 2)

15.     Case agents reviewed several recorded phone calls made by Austin MISURACO from the Milwaukee County Jail after his arrest. On April 14, 2021, Austin MISURACO made a call to his girlfriend, Destiny Frazier. Austin MISURACO discussed with Frazier two Gucci bags taken by the police which contained $80,000 and $50,000. In addition to discussing the circumstances of his arrest, Austin MISURACO also asked Frazier to make third party calls to other members of his DTO, including his brother, Andrew MISURACO. Austin MISURACO discussed amounts of money owed to him by other members of his DTO. Austin MISURACO told his brother to collect these debts. Austin MISURACO told his brother "Fat", who was identified as Quinten MOORE owed Austin MISURACO $10,500 and "Nu-Nu", who case agents have identified as Montrice HOOD owes him $1,500. Austin MISURACO also discussed other co-

conspirators including "Shags", who case agents identified as Shawn SENTER and Andrew CRAWFORD, who Austin MISURACO identifies on recording by first and last name.

16.     On December 6, 2022, case agents took Alexander CRAWFORD into custody and executed a search warrant at his residence.  Case agents recovered two apple iPhones, $4275 in US currency and $40,000 worth of jewelry from Alexander CRAWFORD upon his arrest. Case agents also recovered 33 pounds of marijuana and 33.8 grams of cocaine from Alexander CRAWFORD's residence.  Alexander CRAWFORD provided case agents with consent to search both of his iPhones that he was in possession of at the time of the arrest.  Case agents discovered Montrice HOOD's Facebook account of Loww Nu, (**Target Account**) stored in CRAWFORD'S contact list.

17.     On December 20, 2022, Montrice HOOD, Austin MISURACO, Andrew MISURACO, Alexander CRAWFORD, and others were indicted in the Eastern District of Wisconsin.  The grand jury charges that Montrice HOOD did knowingly and intentionally conspire with others to possess with intent to distribute and distribute controlled substances, in violation of title 21, United States Code, Section 841(a)(1) and 846.

18.     On January 5, 2022, case agents conducted an open search of Facebook and located photos and videos on Loww Nu, https://www.facebook.com/montrice.HOOD (**Target Account)** showing Montrice HOOD holding up firearms and large amounts of US currency. Additionally, case agents located photos of Montrice HOOD with Austin MISURACO and Andrew MISURACO. Figure 2 shows Montrice HOOD holding up cash and what appears to be two Glock pistols.  One Glock has a drum magazine that typically holds 50 rounds.  The other Glock has an extend magazine or commonly referred to as a "stick magazine" that typically holds 30 rounds of ammunition.



(Figure 3)

19.     Case agents also observed a video of Montrice HOOD and Andrew MISURACO on Loww Nu, https://www.facebook.com/montrice.HOOD (**Target Account)** publicly viewable account.  Figures 4, 5, and 6 are screen shots from a video that depicts Montrice HOOD along with Andrew MISURACO singing along to the radio while displaying large amounts of US Currency, then displaying semiautomatic pistols.





**(Figure 4)**          **(Figure 5)**          **(Figure 6)**

20.     Case agents believe the Facebook account associated with user "Loww Nu",
https://www.facebook.com/montrice.HOOD (**Target Account)** continues to contain valuable
information that could be used as evidence for the possible crimes of distribution and possession
with intent to distribute controlled substances and conspiracy to distribute and possess with the
intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841
and 846.

<h3 style="text-align:center"><u>FACEBOOK INFORMATION</u></h3>

21.     Case agents believe the Facebook content sought and outlined in Attachment B are
evidence relating to this investigation are available to Meta.

22.     Meta owns and operates Facebook, a free-access social networking website that can
be accessed at http://www.facebook.com.  Facebook users can use their accounts to share
communications, news, photographs, videos, and other information with other Facebook users,
and sometimes with the general public.

23.     Meta asks Facebook users to provide basic contact and personal identifying
information either during the registration process or thereafter.  This information may include the
user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and
zip code), telephone numbers, screen names, websites, and other personal identifiers.  Each
Facebook user is assigned a user identification number and can choose a username.

24.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other.  Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

25.     Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts.  By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users.  A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings.  Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

26.     Facebook users can create profiles that include photographs, lists of personal interests, and other information.  Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet.  Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list.  In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or

her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

27.     Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes.  Users can "tag" other users in a photo or video and can be tagged by others.  When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

28.     Facebook users can use Facebook Messenger to communicate with other users via text, voice, video.  Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and retains transactional records related to voice and video chats of the date of each call.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

29.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

30.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

31.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

32.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the

account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

33.     Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

34.     In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

35.     Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

36.     Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

37.     Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

38.      As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

39.     Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

40.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## JURISDICTION

41.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## CONCLUSION

42.     Based on the foregoing, I request that the Court issue the proposed search warrant.

43.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

**Property to Be Searched**

**Matter No. 2021R00182**

This warrant applies to information associated with Facebook account associated with user name "Loww Nu" and Facebook URL https://www.facebook.com/montrice.HOOD (**Target Account)** that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

## Matter No. 2021R00182

**I.      Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a)      All contact and personal identifying information, including**:** full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)      All activity logs for the account and all other documents showing the user's posts and other Facebook activities from January 1, 2022, to present;

(c)      All photos uploaded by that user ID and all photos uploaded by any user that have that user tagged in them from January 1, 2022, to present, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d)      All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including

the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user from January 1, 2022, to present, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(f) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from January 1, 2022, to present;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

(o)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

(r)     Records relating to who created, used, or communicated with the user ID, including records about their identities and whereabouts.

II.     **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of in violation of Title 21 United States Code Sections 841(a)(1) and 846, involving Austin MISURACO, aka "Stewie," Darlin CONTRERAS-LANTIGUA, Andrew CRAWFORD, Alexander CRAWFORD, Andrew CRAWFORD, Quentin Moore, Montrice HOOD, and other identified and unidentified individuals since January 1, 2022, to present, including, for each user ID identified on Attachment A, information pertaining to the following matters:§

(a)     The sale of illegal drugs, any preparatory steps taken in furtherance of the criminal scheme, and communications between Montrice HOOD, and others related to the relevant offense conduct of the sale of illegal drugs or possession of firearms.

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).